IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| SOUTH DAKOTA BOARD OF REGENTS as governing board for South Dakota Agricultural Experiment Station and South Dakota State University,<br><br>    Plaintiff,<br><br>v.<br><br>DISCOUNT SEEDS, INC., and JOHN DOES 1-25,<br><br>    Defendants. | CASE NO.  5:20-cv-4115<br><br>**COMPLAINT** |

Plaintiff South Dakota Board of Regents (the "Board of Regents") as governing board for the South Dakota Agricultural Experiment Station ("SDAES") and South Dakota State University ("SDSU") brings this action for damages and permanent injunctive relief against Defendants Discount Seeds, Inc., for their unauthorized sale, conditioning, stocking, and dispensing without proper notice, of Plaintiff's proprietary oat varieties, as well as instigating and actively inducing violations of one or more prohibited acts by others, all in violation of Plaintiff's rights under the Plant Variety Protection Act, 7 U.S.C. § 2321 *et seq.* ("PVPA"). Plaintiff alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under the laws of the United States, and 28 U.S.C. § 1338, which provides that district courts have original jurisdiction over any civil action arising under any Act of Congress relating to plant variety protection.

2.  Venue is proper in this district pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims occurred in this district, and most of the Defendants reside in this district.

## THE PARTIES

3.  The Board of Regents was created to implement the requirements of Section 3, Article XIV of the South Dakota Constitution, that publicly funded postsecondary institutions be governed by a board of regents. SDCL § 13-49-1. Constituted as a corporation, or body corporate, the Board of Regents enjoys the "power to sue and be sued, to hold, lease, and manage, for the purposes for which they were established, any property belonging to the educational institutions under its control, collectively or severally, of which it shall in any manner become possessed." SDCL § 13-49-11.

4.  The Board of Regents controls SDAES and SDSU. SDCL §§ 13-58-11 and 13-58-1, respectively. The Board of Regents encourages institutions under its control to pursue research, to protect intellectual properties arising from such research and to enter into such agreements as may be necessary and proper to license or otherwise to provide for the commercial application of research results. To such ends, it delegated to institutional officers the authority to secure intellectual property protection in the name of the institution that conducted the research. Board of Regents Policies 1:6, Section 3.6, and 4:34, Section 7.

5.  Created in 1887 to implement the Hatch Act as part of South Dakota's land-grant institution, SDAES has a mission to conduct research to enhance quality of life in South Dakota through the beneficial use and development of human, economic, and natural resources. As part of this effort, SDAES assists oat producers, seedsmen, and researchers to strengthen the oat industry by creating an oat variety delivery system that promotes stewardship of varieties and

traits, provides new funds for oat research, and ensures availability of improved oat varieties to benefit farmers and consumers. SDAES has its principal place of operations in Brookings, South Dakota. SDCL § 13-58-11.

6. Founded in 1881 as a land-grant university, SDSU has been committed to the academic and professional advancement of all citizens in the state. As part of this effort, SDSU has a goal to promote, encourage and aid research in the agricultural arena and to provide the means, methods, and agencies by which inventions and discoveries at SDSU may be patented, commercialized, or otherwise disposed of for the benefit of the people of South Dakota and society as a whole. SDCL § 13-58-1.

7. Defendant Discount Seeds, Inc. ("Discount") is an incorporated entity pursuant to the laws of South Dakota. The registered agent is Heidi A. Fiechtner, 2411 9th Ave. SW, Watertown, SD 57201. This corporation has the following principal officers and directors: President Dean Minnerath, Vice President Karen Minnerath, Secretary Heidi Fiechtner, and Treasurer Jeff Fiechtner. On information, all directors and officers are aware of the conduct alleged in this lawsuit for infringement of Plaintiff's federally protected varieties by diversion of grain for use a seed, sales of unauthorized seed for planting, and widespread illegal and unauthorized transfers of seed oats between farmers in the region. By virtue of such knowledge and direction, each officer and director shares individually in the infringement liability. Additional officers and directors are likely John Does, but out of an abundance of caution, Plaintiff has not named them without additional discovery in this first complaint.

8. Defendants John Doe 1-25 are (i) downstream customers who purchased unauthorized PVPA-protected seed from or through Discount or other distributors connected to Defendant; (ii) conditioners who cleaned unauthorized PVPA-protected oats for Discount or

others; and (iii) other persons otherwise acting in concert with Discount in the illegal operations and diversion.

## STATEMENT OF CLAIM
## PLANT VARIETY PROTECTION REGISTRATION

9.     This action arises under the Plant Variety Protection Act, 7 U.S.C. § 2321 *et seq.*, which provides patent-like protection to breeders of certain varieties, and their assignees, who may acquire the right to prevent others from selling the variety or offering the variety for sale for a period of twenty (20) years. 7 U.S.C. § 2483.

10.    On December 29, 2015, SDAES made application to the Plant Variety Protection Office pursuant to 7 U.S.C. § 2421 for protection of another novel variety of oat it had developed known as the "Hayden" oat variety.

11.    On November 28, 2016, a PVP Certificate for the Hayden variety was issued to SDAES pursuant to 7 U.S.C. § 2482 under the seal of the Plant Variety Protection Office and was recorded in the Plant Variety Protection Office. Certificate No. 201600054 is not scheduled to lapse until November 28, 2036. The PVP Certificate for Hayden is attached as Exhibit 1.

12.    On March 1, 2013, SDAES made application to the Plant Variety Protection Office pursuant to 7 U.S.C. § 2421 of the PVPA for protection of another novel variety of oat it had developed known as the "Horsepower" oat variety.

13.    On March 30, 2015, a PVP Certificate for the Horsepower variety was issued to SDAES pursuant to 28 U.S.C. § 2482 under the seal of the Plant Variety Protection Office and was recorded in the Plant Variety Protection Office. Certificate No. 201300160 is not scheduled to lapse until March 30, 2035. The PVP Certificate for Horsepower is attached as Exhibit 2.

14.    Plaintiff additionally has PVP rights to many other varieties including Natty, Goliath, Shelby 427, among others. All such certificates of protection are valid and subsisting.

15. The PVP Certificates for Plaintiff's oat varieties, including the Hayden, Horsepower, Goliath, Natty, Shelby 427 and Stallion varieties, all specified that the seed of the respective varieties could only be sold in the United States as a class of certified seed, meaning that before sale for planting purposes, the seed had to be certified by an approved governmental or private agency as to variety and purity. This added step is known as a Title V election under the Federal Seed Act, 7 U.S.C. § 1611. *See also* 7 U.S.C. § 2483(a)(2)(A).

16. The PVP Certificates for each of Plaintiff's oat varieties at issue in this lawsuit were and remain in full force and effect during the time period of alleged infringement of each respective variety. Additional varieties may be revealed in discovery when identifying the John Doe upstream providers, downstream purchasers, and contributors to the illegal operation and diversion of grain for planting.

17. At all times relevant herein, each Defendant had actual notice and knowledge that Plaintiff's oat varieties were federally protected by the PVPA.

18. Title 7, Section 2541 of the United States Code provides that it is an infringement of the owner's rights in a protected variety, *inter alia*, to sell the variety without authorization of the owner or to dispense the variety to another in a form that can be propagated without notice that it is a protected variety. Section 2541 also provides that it is an infringement to use the variety for propagation without the owner's authorization; to stock, condition, ship, or consign the protected variety without authority; or to instigate or actively induce any act that constitutes an infringement.

19. Title 7, United States Code Section 2563 provides that a court may grant an injunction to prevent violations of rights under the PVPA. Section 2564 provides that upon a finding of infringement, the court shall award damages adequate to compensate for the infringement, but in no event less than a reasonable royalty together with interest and costs.

Section 2564 also provides that the court may increase the damages up to three times the amount determined, and, in exceptional cases, the court may award reasonable attorney's fees to the prevailing party under § 2565.

20. Title 7, United States Code Section 2543 provides a crop exemption for growers and other persons that permits a bona fide sale of a protected variety into usual grain channels (i.e., for feed purposes), but § 2543 does not exempt from PVPA protection the sale of grain of a protected variety for use as seed for reproductive purposes without the authorization of the plant variety owner.

21. Title 7, United States Code Section 2543 further provides that if a purchaser diverts a protected variety from usual grain channels to use for reproductive purposes, that purchaser is deemed to have notice under § 2567 that its actions constitute an infringement of the PVPA for purposes of a damages action by the owner of the protected variety.

22. Discount clearly diverted its inventory for planting purposes as proven following an arms-length investigation into Defendant Discount's operations during the 2019 crop and planting season.

## DISCOUNT SEED'S OPERATIONS

23. At all times relevant herein, each Defendant had actual notice and knowledge that Plaintiff's oat varieties were federally protected by the PVPA.

24. Plaintiff's representatives have personally visited Discount's operations and discussed at length the importance of Plaintiff protecting intellectual property rights. Plaintiff's representatives have sent formal cease and desist letters and notices to Discount, on several occasions.

25. On October 2, 2015, Discount was given specific notice that it's past conduct constituted PVPA infringement in Plaintiff's letter, authored by Dean Kevin D. Kephart, Vice President for Research and Economic Development for South Dakota State University. See Exhibit 3. In the letter, Plaintiff memorialized Discount's acknowledgement of a Cease and Desist letter sent previously by Plaintiff and invited a personal meeting to discuss the legality of Discount's operations.

26. In a December 10, 2015 in-person meeting with Discount's officers and Registered Agent Jeff Feichtner and Heidi Fiechtner, Dean Kevin Kephart and others from SDSU itemized and detailed the results of a Department of Agriculture seed test analyses relating to various Stop Orders issued against Discount. The South Dakota Department of Agriculture's Stop Orders prohibited the sale of incorrectly labeled and packaged oat seed. The scientific analyses supporting such Stop Orders also revealed how Discount was selling Plaintiff's oat varieties in an unauthorized manner. At the in-person meeting, the attendees discussed multiple errors by Discount in handling, marketing, marking, bagging, and selling federally protected seed. Plaintiff described oat seed infringements and gave specific examples of glaring problems Discount must correct going forward to avoid a lawsuit.

27. During that in-person meeting, both Feichtners acknowledged and apologized for their mishandling of Plaintiff's varieties and indicated there would not be future issues in Discount's handling of seed.

28. During that in-person meeting, Plaintiff discussed its obligation to pursue infringement claims and expressly cautioned Discount against the use of non-PVP varieties for forage planting, explaining how Discount needed to comply with the laws.

29.     In concluding the meeting, Plaintiff discussed its willingness to answer any questions. At that time, the Feichtners, as authorized agents and principals of Discount, and also in their individual capacity, acknowledged their personal understanding of certified seed and the PVPA prohibitions against sales for planting.

30.     Discount understands PVPA protections are ubiquitous for oat seed—a major spring-sown, small grain crop. To illustrate, in a 2015 study which was conducted by researchers with Iowa State University Northern and Northeast Research Farms in Kanawha and Nashua, as reported by www.practicalfarmers.org, of the sixteen (16) oat varieties reported to have been planted and studied in Iowa, all sixteen (16) were federally protected by the PVPA. See table, below:

**Table 1**  State of origin, PVP[a] and disease ratings[b] for oat varieties included in both experiments at ISU Northern and Northeastern Research and Demonstration Farms in Kanawha and Nashua, respectively, in 2015.

| Variety | State of origin[a] | PVP[b] | Maturity | Disease name and disease ratings[c] by variety | | | |
|---|---|---|---|---|---|---|---|
| | | | | Crown rust | Stem rust | BYDV[d] | Smut |
| Badger | WI | PVP | Early | MR | MS | MR | R |
| BetaGene | WI | PVP | Mid-Late | MR | MR | R | R |
| Deon | MN | PVP | Late | MR | MS | MR | R |
| Excel | IN | PVP | Early | MS | S | R | MR |
| GM423 | GM | PVP | Late | MS | MS | MR | -- |
| Goliath | SD | PVP | Late | MS | R | MR | MR |
| Hayden | SD | PVP | Mid-Late | MS | MS | MR | R |
| Horsepower | SD | PVP | Medium | MS | MS | MS | MR |
| Jerry | ND | PVP | Medium | MS | MS | MS | MS |
| Leggett | AAFC | PVP | Early | MR | MR | S | R |
| Natty | SD | PVP | Medium | MR | MS | MR | R |
| Rockford | ND | PVP | Late | MS | MS | MR | MR |
| Saber | IL | PVP | Early | MS | S | R | MS |
| Shelby 427 | SD | PVP | Medium | MS | MS | MR | MR |
| Souris | ND | PVP | Medium | S | MS | MS | MR |
| Tack | IL | PVP | Early | R | S | R | S |

[a] Origin: AAFC-Agriculture and Agri-Food Canada; GM-General Mills; IL-University of Illinois; IN-Purdue University; MN-University of Minnesota; ND-North Dakota State University; SD-South Dakota State University; WI-University of Wisconsin.
[b] PVP = Plant Variety Protection. The PVP Act provides a certificate to the developer of a variety granting exclusive rights for reproducing and marketing the seed.
[c] Disease Ratings: S = susceptible; MS = moderately susceptible; MR = moderately resistant; R = resistant.
[d] Disease: BYDV = Barley Yellow Dwarf Virus.

Page 2 of 6          PRACTICAL FARMERS OF IOWA          November 2015
                     www.practicalfarmers.org

31. Because Discount actively markets Plaintiff's oat varieties to its region and customers, it was also aware that the seed being planted by its customers was federally protected under the PVPA.

32. Discount had actual, specific, repeated, and in-person notice that the oat varieties it was selling were federally protected.

## **DEFENDANTS' WILLFUL VIOLATIONS OF PVPA**

33. Discount has direct and personal knowledge of the Plant Variety Protection Act and the protections and limitations surrounding use of Plaintiff's, and others' federally protected varieties.

34. In the 2019 harvest season, Discount bought the harvest of federally protected oat seed and intentionally, knowingly, and with no mistake thereafter re-sold and offered for sale Plaintiff's protected oat varieties to producers for planting, on multiple occasions.

35. Discount, having multiple officers who themselves are experienced seedsmen and operators of commercial seed operations that utilize oats that are protected by the Plant Variety Protection Act, was factually aware of the strict protocols and requirements necessary before Title V, PVPA-protected oats may be sold legally for seeding purposes.

36. Discount actively markets "Seed Oats" having the "Finest Quality." The bags of seed do not have proper notices, proper seed testing information, nor do the bags identify the federally protected status of the varietal contents of such bags.

37. The bags do not properly identify that Plaintiff's federally protected varieties are contained in such bags. Below is a photograph depiction of Discount's brown bags. The photograph was obtained in connection with Plaintiff's 2019 investigation into Discount's operations.



38. Discount sold and offered for sale very large quantities of the "Seed Oats" that were cleaned and sold or offered for sale to the public with no PVPA adherence nor quality restrictions. Below is a true and correct photo depicting a large warehouse of large amounts of cleaned oats bagged and labeled as "Seed Oats," yet none of the bags complied with proper seed labeling laws nor were they authorized to be sold as uncertified varieties. Plaintiff's varieties are legally required to be sold as a class of certified seed.



39. At all times relevant to the complaints herein, Plaintiff only authorized sales of its protected varieties with written notice containing statutorily designated language signifying that the seed was protected under the PVPA, that unauthorized propagation or multiplication of the

seed was prohibited, and that the use of the seed by the purchaser was authorized only for purposes of growing a commercial crop of grain. Plaintiff required such notice on all bags of its protected oat varieties sold and on notices accompanying all bulk sales of such oat seed for planting. In addition, Plaintiff consistently and prominently marked the varieties with statutory PVPA notices on its marketing and promotional materials for such varieties.

40. Discount sold the grain it had diverted from usual grain channels through a practice known as "brown bagging," in which a person or entity uses grain grown from proprietary seed and prepares it for use as seed without authorization of the owner of the proprietary seed. In some areas of the country, the grain is repackaged in seed bags, often brown or sometimes white.

41. The seed purchased by the investigator from Discount was sent for scientific testing and the results confirmed the oats sold to the investigator in this brown-bagged manner were Plaintiff's federally protected seed.

42. The seed purchased by the investigator from Discount was purchased at a premium rate above the price of grain, but such price was far below the price of certified seed, thereby creating a clear incentive to deprive Plaintiff of its rightful royalty and harming the area authorized seed dealers from sales otherwise available to them.

43. This is not an isolated incident. Discount resells for propagation purposes such uncertified and unauthorized seed further downstream to producers when it is time to plant oat seed in South Dakota, and possibly other nearby states. It has done so for a long time.

**JOHN DOES - DOWNSTREAM CUSTOMERS OF ILLEGAL SEED**

44. Without authorization, Discount sold Plaintiff's protected seed varieties to many different customers. All such unauthorized transactions constitute violations of Plaintiff's rights under the PVPA by both parties to the transaction, and the downstream buyers are continuing the

infringement due to the self-replicating nature of seed. Such use should be enjoined, at the very minimum. Depending on the use by the downstream buyer, there may be additional infringements by the propagation of such illegal seed.

## COUNT I
## DAMAGES FOR INFRINGEMENT PER 7 U.S.C. § § 2541(a)

45. Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs.

46. Without authorization from Plaintiff, Defendants stocked Plaintiff's protected varieties for purposes in violation of the PVPA.

47. Without authorization from Plaintiff, Defendants conditioned Plaintiff's protected varieties for propagation purposes in violation of the PVPA.

48. Without authorization from Plaintiff, Defendants sold Plaintiff's protected varieties for the purpose of propagation in violation of the PVPA.

49. Without authorization from Plaintiff, Defendants dispensed Plaintiff's protected varieties, in a form which can be propagated, without restriction to other growers, in violation of the PVPA.

50. Without authorization from Plaintiff, Defendants instigated and actively induced infringement under the PVPA by engaging in the illegal seed business described above, in violation of the PVPA.

51. Without authorization from Plaintiff, Discount actively diverted grain back into seeding channels and is deemed to have notice that such conduct violates the PVPA.

52. Without authorization from Plaintiff, Discount willfully and deliberately infringed the PVPA by the foregoing acts.

53. Defendants' actions constitute an infringement of Plaintiff's rights under 7 U.S.C. § 2541, for which all Defendants are accountable in damages.

54. As a result of Defendants' actions, Plaintiff has suffered harm for which it is entitled to damages, including without limitation:

> a) Compensation for Defendants' unauthorized sale, use, and condition of Plaintiff's protected varieties in an amount not less than a reasonable royalty, per 7 U.S.C. § 2564(a);
>
> b) Damage to Plaintiff's reputation or the reputations of Plaintiff's protected varieties by the unauthorized sale of said varieties which were not produced in accordance with Plaintiff's practices and standards; and
>
> c) Expenses incurred or reasonably expected to be incurred as a direct result of Plaintiff's actions to recover seed or grain grown from Defendants' unauthorized purchase, use, and sale of seed, and/or expenses incurred in identifying and notifying persons who purchased seed of Plaintiff's protected varieties from Defendants that such seed was not produced by or in accord with the standards of Plaintiff and that any grain grown from such seed is protected by the PVPA, cannot be grown for any purpose other than as commercial grain crop, and cannot be held out as seed of any of Plaintiff's protected varieties.

**COUNT II**
**INJUNCTION PURSUANT TO 7 U.S.C. § 2563**

55. Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs.

56. Plaintiff is entitled to the following injunctive relief pursuant to 7 U.S.C. § 2563 :

a) Permanently enjoining any further sales or other disposition by Defendants of grain grown from Plaintiff's PVPA-protected varieties for reproductive purposes;

b) Requiring the ultimate destruction of all oats of Plaintiff's protected varieties in Defendants' possession or control to prevent future illegal harvests from being replanted;

c) Allowing for access to Defendants' facilities and premises, including leased lands, to identify the scope of the infringing conduct at a time when the crops remain in the field, thereafter permitting the crops to grow, harvest, and then store in constructive trust while the suit proceeds;

d) Requiring the disclosure of the names and addresses of all persons or entities who purchased oat seed from, supplied oat seed to, conditioned oat seed for, or stored oat seed for or with Defendants, to allow the parties to identify the scope of the illegal replanting and allow the parties sufficient time to give adequate notice to those persons or entities of their opportunity to be heard, with the ultimate goal to allow the crop, once identified, to be harvested and stored in constructive trust while the suit proceeds; and

d) Requiring an accounting of all revenues and profits Defendants derived from the sale, use and conditioning of Plaintiff's protected varieties.

**COUNT III**
**TREBLE DAMAGES AND ATTORNEYS' FEES**

57. Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs.

58. Defendants knew or recklessly disregarded the fact that by brown bagging the grain in question and selling it for reproductive purposes they were infringing federal intellectual property rights.

59. Defendants knowingly sold the brown-bagged seed for planting at a substantial discount compared to the price authorized dealers charged for certified seed. They intentionally set their pricing to divert sales from authorized channels for their own profit.

60. Defendants knowingly and intentionally caused substantial damage to Plaintiff and recklessly placed Plaintiff at substantial risk of further misuse of its seed by placing the seed in commerce without notice of its protected status.

61. As the result of Defendants' actions, Plaintiff has incurred substantial damages, attorney's fees, and costs, and will in the future incur additional damages, attorney's fees, and costs.

62. Defendants' actions constitute an exceptional case for which the award of attorney's fees are recoverable pursuant to 7 U.S.C. § 2565.

63. Treble damages are appropriate pursuant to 7 U.S.C. § 2564(b) of the PVPA.

64. Plaintiff does not seek a jury trial.

## RELIEF DEMANDED

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Awarding Plaintiff compensation for damages resulting from the infringement in an amount not less than a reasonable royalty, and trebled;

b) Ordering permanent injunctive relief:

      i. Directing Defendants to make no further sales for reproductive purposes of any oats or wheat for which Plaintiff holds PVPA protection without express authorization from Plaintiff;

      ii. Directing Defendants to identify all storage facilities and suppliers of wheat and oat seed;

      iii. Requiring Defendants to account for all acquisitions, uses and sales of federally protected wheat and oats, including the names and addresses of all suppliers and purchasers and the quantity so purchased or sold.

c) Awarding pre-judgment and post-judgment interest;

d) Awarding Plaintiff its attorneys' fees, costs, and expenses incurred in this action; and

e) Awarding such other relief as the Court may deem just and proper.

Dated this 6th day of August, 2020.

      /s/ Justin J. Goetz
      Justin J. Goetz, Assistant General Counsel
      South Dakota State University
      Morrill Hall 234, Box 2201
      Brookings, SD 57007
      Telephone: (605) 688-5248
      Email:justin.goetz@sdstate.edu
      South Dakota Bar License No.: 4247

Mark Murphey Henry, Ark. #97170
HENRY LAW FIRM
P.O. Box 4800
Fayetteville, Arkansas 72702
Telephone: (479) 368-0555
Email: mark@henry.us
Applying Pro Hac Vice – Motion to Follow

*Counsel for Plaintiff South Dakota*
*Board of Regents, as governing board*
*for South Dakota Agricultural Experiment*
*Station and South Dakota State University*

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1 U.S. Government Plaintiff
- ❏ 2 U.S. Government Defendant
- ❏ 3 Federal Question *(U.S. Government Not a Party)*
- ❏ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 480 Consumer Credit (15 USC 1681 or 1692) |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 485 Telephone Consumer Protection Act |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 490 Cable/Sat TV |
| ❏ 196 Franchise | | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 850 Securities/Commodities/ Exchange |
| | | | ❏ 790 Other Labor Litigation | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement Income Security Act | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ❏ 893 Environmental Matters |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 895 Freedom of Information Act |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 896 Arbitration |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | ❏ 950 Constitutionality of State Statutes |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ❏ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation - Transfer
- ❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ❏ Yes ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____